UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSENDO SALAS-ROSAS,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3866-MLP

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, challenging an immigration judge's ("IJ") September 21, 2026, bond denial as an abuse of discretion in violation of his due process rights under the Fifth Amendment. (Dkt. # 1 at 7-16.) He seeks release from custody and requests this Court retain jurisdiction to ensure compliance with the Court's Order. (*Id.* at 21.) Respondents filed a return to the petition (dkt. # 7), together with supporting declarations from their counsel Barbara Andrade (dkt. # 8 ("Andrade Decl.")) and U.S. Department of Homeland Security ("DHS") Deportation Officer Vincent Cvitanovic (dkt. # 11 ("Cvitanovic Decl.")). Petitioner filed a traverse in reply. (Dkt. # 12.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth herein.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Mexico, who first entered the United States sometime before November 2006. (Dkt. # 1 at 2.) He was encountered by Border Patrol and granted a voluntary return to Mexico on November 27, 2006. (Cvitanovic Decl., ¶ 4.) He was subsequently encountered by Border Patrol and granted voluntary returns on June 30, 2020 and July 6, 2020. (*Id.*)

Petitioner's most recent entry into the United States was on September 11, 2020. (Dkt. # 1 at 2.) He lived with his wife and family in Lakewood, Washington, where he has "maintained substantial employment and financial ties to the community and has filed tax returns." (*Id.* at 3.) On November 24, 2025, Petitioner was arrested for physical control of a motor vehicle in Edmonds, Washington. (Cvitanovic Decl., ¶ 5.)

On July 10, 2026, ICE's Office of Enforcement and Removal Operations ("ERO") issued a warrant for Petitioner's arrest and executed that warrant in Lakewood, Washington. (Cvitanovic Decl., ¶ 6.) He was thereafter transported to the NWIPC, where he remains detained. (*Id.*) ERO served Petitioner with a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA"), and scheduling him to appear before the immigration court. (*Id.* ¶ 7; *see* Andrade Decl., ¶ 2, Ex. A.) ERO conducted a custody determination, which Officer Cvitanovic asserts included an informal interview of Petitioner. (Cvitanovic Decl., ¶ 8.) ERO determined that Petitioner was to remain detained until the conclusion of his removal proceedings. (*Id.*)

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

While detained, Petitioner requested a bond hearing, which the immigration court held on September 21, 2026. (Cvitanovic Decl., ¶¶ 9-10.) Prior to the bond hearing, Petitioner filed, through counsel, a bond packet to support his request. (Dkt. # 1 at 4.) The packet included Petitioner's Mexican passport and Washington State driver's license (dkt. # 3 at 4-5), proof that his application for asylum was filed (*id.* at 6), a criminal history report showing a lack of criminal history (*id.* at 7-10), federal tax return documents (*id.* at 11-14), a residential lease agreement (*id.* at 16-22), copies of his family's social security cards (*id.* at 23-27), family photographs (*id.* at 28-37), and letters of support (*id.* at 38-41).

The IJ found that Petitioner failed to prove he was not a danger or a flight risk and denied Petitioner's request for bond. (*See* dkt. # 2 at 5-6 (order).) The IJ issued his ruling on a checkbox order, which indicates the IJ found Petitioner to be a "Flight Risk, Danger to persons, property." (*Id.* at 5.) There is an additional box entitled "Other" that states "Conditional release is: Denied." (*Id.*) There is no additional analysis or discussion. It does not appear Petitioner appealed the IJ's denial with the Board of Immigration Appeals ("BIA"). (Cvitanovic Decl., ¶ 13.)

On September 25, 2026, an IJ denied Petitioner's application for relief from removal and ordered him removed to Mexico. (Cvitanovic Decl., ¶ 11.) Petitioner filed an appeal of the removal order with the BIA on October 21, 2026. (*Id.* ¶ 12.) Petitioner filed the instant petition on October 10, 2026. (Dkt. # 1.)

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A

petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges the IJ's bond denial as unconstitutional under the Due Process Clause of the Fifth Amendment. (Dkt. # 1 at 7-16.) Respondents do not substantively respond to Petitioner's claim that the IJ abused his discretion or that he was denied due process. (*See generally* dkt. # 7.) Instead, Respondents only contend that the Court should deny the petition because Petitioner has not demonstrated grounds to excuse or waive the prudential exhaustion requirement. (*Id.* at 4-10.)

### A. The Court Waives Exhaustion

It is not clear that there remains an available administrative remedy to exhaust because the deadline to appeal the bond denial at issue passed on October 21, 2026. (*See* dkt. # 2 at 6.) Neither party explains whether an appeal remains a viable option but nevertheless reach opposite conclusions in their exhaustion analysis. (Dkt. # 1 at 16-19; dkt. # 7 at 4-10.)

Even if Petitioner's appeal is not time barred, the Court would waive exhaustion. In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). The Court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). The party seeking waiver of exhaustion bears the burden to show one of the "*Laing*" factors applies. *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

The Court finds that waiver of the exhaustion requirement is appropriate here, under *Laing*, as administrative remedies are "inadequate or not efficacious" and "irreparable injury would result." *Laing*, 370 F.3d at 1000. Recent government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d, 1297, 1307 (W.D. Wash. 2025), *aff'd sub nom*. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). Petitioner has been detained since July 10, 2026 and requiring him to wait for BIA review "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Zavala Sandoval v. Hernandez*, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (citations omitted); *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).

Further, the Ninth Circuit has acknowledged that "economic burdens imposed on detainees and their families as a result of detention" as well as "the collateral harms to children of detainees whose parents are detained" are relevant considerations in the irreparable harm analysis. *Hernandez*, 872 F.3d at 995; *see also Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (acknowledging the separation of families as "substantial injuries and even irreparable harms"). Petitioner asserts that "his continued detention deprives him of his fundamental liberty, prolongs his separation from his wife, children, and extended family, and prevents him from returning to his established home, employment, and community in Washington." (Dkt. # 12 at 7.) The Court finds that requiring Petitioner to remain detained while pursuing a lengthy appeal with the BIA would cause sufficiently individualized irreparable harm, and thus waives the exhaustion requirement.

**B. The IJ Abused His Discretion**

Habeas courts review an IJ's bond determination for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779–80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *In Re Guerra*,: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40.

Here, the IJ did not issue a written memorandum further explaining his decision. The parties did, however, provide an audio recording from the challenged hearing (Andrade Decl., ¶ 4, Ex. F), which the Court summarizes here: The IJ introduced himself and identified the case number. (*Id.* at 00:27.) A Spanish language interpreter was available but was not utilized for interpretation at the request of Petitioner's counsel. (*Id.* at 00:48-01:10.) The IJ acknowledged

the bond hearing was not scheduled pursuant to a habeas order. (*Id.*) The IJ mentioned the Court's "system" had only received a 41-page document that morning and took a recess to review that document, which this Court presumes to be Petitioner's bond packet. (*Id.* at 02:18.)

Upon returning from recess, the IJ acknowledged having reviewed the evidence. (*Id.* at 02:50.) The audio quality is low, but it appears the IJ marked the bond redetermination request as "Exhibit 1," the government's I-213 DHS administrative report (*see* Andrade Decl., ¶ 2, Ex. C) as "Exhibit 3," and Petitioner's bond packet (*see* dkt. # 2) as "Exhibit 4." (*Id.*)

Petitioner's counsel began and acknowledged Petitioner's entry history from 2006 and 2020. (Andrade Decl., ¶ 4, Ex. F at 03:24.) She then stated Petitioner is married and acknowledged her client's spouse does not have status. (*Id.*) She stated Petitioner has five children between the ages of 8 and 25, none of whom have U.S. citizenship or residency. (*Id.* at 04:24.) Counsel then noted that Petitioner does "janitorial work and has a fixed address in Lakewood." (*Id.* at 04:38.) Petitioner's counsel reiterated that his criminal charge from 2025 remained pending and there was "no conviction." (*Id.* at 04:58.) She also reminded the IJ that Petitioner had pending applications for asylum, withholding, and Convention Against Torture ("CAT") relief. (*Id.* at 05:13.) Counsel concluded by asking for release on a reasonable bond because her client is not a flight risk or danger. (*Id.* at 05:28.)

Next, counsel for DHS emphasized Petitioner's three voluntary returns to Mexico. (Andrade Decl., ¶ 4, Ex. F at 05:44.) He then indicated Petitioner had been charged with "no vehicle license" in 2002 and had a pending DUI-related charge in Edmonds from December of 2025. (*Id.* at 05:48-05:56.) Next, counsel stated Petitioner's "weak" asylum claim was docketed for "Thursday of this week" and that if DHS could "keep him detained, his immigration hearing [would] be over right soon." (*Id.* at 06:12.) Counsel for DHS concluded that Petitioner is a flight

risk and "potentially a danger due to the driving while impaired charge." (*Id.* at 06:24.) The IJ responded and clarified that Petitioner's pending charge was not driving-related. (*Id.* at 06:30.)

The IJ then denied bond, finding Petitioner to be a flight risk "as is noted" in Exhibit 3. (Andrade Decl., ¶ 4, Ex. F at 07:08.) The IJ emphasized that Petitioner "was given two voluntary returns in 2020, [and] also one in 2006." (*Id.* at 07:16.) The IJ stated he had "some concern regarding the pending charge for physical control of a motor vehicle." (*Id.* at 07:24.) Finally, the IJ "acknowledge[d] the fact that relief in [Petitioner's] case [was] speculative given the fact that he doesn't have any U.S.-citizen children and it's been well over a year since he came to the United States." (*Id.* at 07:46.)

It thus appears from the hearing audio that the IJ denied bond based on Petitioner's immigration history, Petitioner's pending charge from 2025, and what the IJ characterized as "speculative" applications for relief. Petitioner argues this was arbitrary, an abuse of discretion, and a failure to meaningfully engage with, or weigh, Petitioner's positive equities under *Guerra*. (Dkt. # 1 at 7, 10.)

Turning to the first basis—Petitioner's immigration history—the IJ failed to connect that history to a risk of flight *today*, and in light of Petitioner's positive ties to the United States. *See Miranda v. Hernandez*, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026) ("The IJ does not explain how [petitioner's] prior unlawful entry, an event that occurred almost three decades ago, . . . informs his flight risk *today*, . . . in the face of overwhelming evidence of his deep ties to his community and family.") (emphasis in original); *Montiel Moreno v. Hernandez*, 2026 WL 1906522 (W.D. Wash. June 18, 2026) (similar); *Rodriguez-Pineda v. Hernandez*, 2026 WL 2321531, at *4 (W.D. Wash. Aug. 11, 2026) (similar). In fact, the IJ failed to articulate any connection between Petitioner's immigration history and the risk of flight, generally. Arguably,

Petitioner's immigration history shows that Petitioner was reluctant to return to Mexico and/or leave the United States, but it does not necessarily follow that he is thus unlikely to appear for future proceedings or poses a risk of absconding.

It is similarly unclear why the IJ believed Petitioner's 2025 arrest supported denying bond. The IJ only stated that he had "some concern" about the pending charge but does not further articulate the concern or whether it was related to Petitioner's risk of flight or danger. Nor does it appear the IJ had any other information about the facts or details of the underlying arrest other than the arrest itself, as the parties' evidence only shows that Petitioner had been arrested for physical control. (*See* dkt. # 3 at 9; Andrade Decl., ¶ 2, Ex. C. at 4.) It is not clear whether charges were even filed. So, while the Court does not minimize Petitioner's criminal case, it was not reasonable for the IJ to conclude, without more, that Petitioner posed a risk of either danger or flight, simply because he had been arrested in 2025.

The third basis—Petitioner's purportedly weak immigration relief—presents a closer question but ultimately suffers from the same defect; a lack of rationale showing why Petitioner's pending applications for relief from removal were so weak that he thus posed a flight risk that outweighed his substantial ties to the community. The BIA has identified that an IJ may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk because "[a] [noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *see also Matter of R-A-V-P-*, 27 I. & N. Dec. at 805 (BIA 2020). However, the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL

1674357, at *7 (W.D. Wash. May 26, 2026); *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)).

Here, Petitioner's counsel emphasized that her client had pending applications for asylum, withholding of removal, and a claim under the Convention Against Torture. In a matter of seconds, however, the IJ seemingly concluded that all of Petitioner's applications were "speculative" because his children are not U.S. citizens and because he entered the United States over a year ago. The IJ provided no further explanation as to why those facts rendered all of Petitioner's applications weak. As this Court has recently stated, "[w]hile it might be rational to draw the conclusion that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, the IJ failed to make that connection to Petitioner's individual circumstances or otherwise discuss whether the 'relative strengths or weaknesses of Petitioner's claims for relief outweighed' the significant evidence that weighed against finding him to be a flight risk." *Rodriguez-Pineda*, 2026 WL 2321531, at *6 (quoting *Soriano*, 2026 WL 969764, at *5).

Consistent with this Court's prior rulings, "In sum, the cited reasons for denying bond do not stand on their own (or in the aggregate) and it does not appear the IJ considered, or engaged with, the significant amount of evidence in Petitioner's favor." *Rodriguez-Pineda*, 2026 WL 2321531, at *6. Petitioner was entitled to an individualized determination that included meaningful consideration of the relevant evidence, which showed a fixed and stable residence in Lakewood, Washington, a history of employment, a dependent family, community ties, and limited criminal history—all of which tends to support release or bond under *Guerra*. Yet, at no point during the hearing did the IJ mention *Guerra* or otherwise acknowledge Petitioner's equities relevant to *Guerra*'s factors. Nor did he meaningfully engage with the evidence, explain

his decision, or articulate what weight, if any, Petitioner's evidence was afforded. When the "[c]ourt is left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors," it "must conclude" that the IJ failed to view the evidence in light of the *Guerra* factors, "which constitutes an abuse of discretion." *Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026). Accordingly, the IJ's decision was an abuse of discretion and Petitioner's continued detention violates due process.

Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). This jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision. *See Rodriguez-Pineda*, 2026 WL 2321531, at *6.

Finally, Petitioner asks this Court to retain jurisdiction "to ensure compliance with the Court's Order and to resolve any disputes concerning its implementation." (Dkt. # 1 at 21.) While the Court has the authority to do so, *see Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011), the Court is unaware of any instance of the government failing to release a habeas petitioner after being ordered to do so by a court in this District. Accordingly, the Court denies Petitioner's request to retain jurisdiction without prejudice. Nothing from this Order prevents Petitioner from filing another habeas petition, should he deem it necessary.

## IV. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2) Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

(4) Petitioner's request for the Court to retain jurisdiction is DENIED.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are strongly encouraged to meet and confer prior to filing a motion for fees.

Dated this 9th day of November, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge